UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ANDREW J. J. WOLF,<br><br>                    Plaintiff,<br><br>        v.<br><br>JOSH TEWALT, et al.,<br><br>                    Defendants. | Case No. 1:18-cv-00264-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Andrew J. J. Wolf ("Plaintiff") is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). Plaintiff has been allowed to proceed on injunctive relief claims against Defendants Tewalt, Page, the IDOC, and the Idaho Board of Correction (collectively, "Defendants"), in their official capacities. Plaintiff alleges that IDOC's policy of prohibiting open flames, such as candles and incense, from being used indoors—even in religious ceremonies—violates two statutes: (1) the federal Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*; and (2) Idaho's Free Exercise of Religion Protected Act, Idaho Code § 73-401 *et seq.*[1] All other claims against all other Defendants have been dismissed. *See* Dkt. 93 at 13–14.

---

[1] Plaintiff does not allege that one religious group is being allowed use of these items indoors, while his Roman Catholic religion is not. Rather, he alleges that the general prison ban on indoor open flames is violating the rights of all prisoners of various faiths who desire to use candles or incense in their indoor worship services.

Defendants have filed a Motion for Summary Judgment, which is now ripe for adjudication.[2] Defendants argue that (1) Plaintiff cannot establish that his exercise of religious belief has been substantially burdened, (2) the policy furthers a compelling governmental interest, and (3) the policy is the least restrictive means of furthering that governmental interest.

The Court previously ordered Plaintiff to address the content of Defendants' Motion for Summary Judgment, especially regarding (1) the obvious present safety and security hazard of an open flame in prison; (2) the 2021 opinion of Tish Thornton, Director of the Office of Worship of the Roman Catholic Diocese of Boise, that battery-operated candles are acceptable for Catholic worship services (which supports the IDOC's grievance response to Plaintiff in 2017); and (3) the fact that the prison has offered to permit an open flame in outdoor worship services if Plaintiff—unlike the Diocese—requires an open flame in his worship. *See* Dkt. 116 at 6.

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* Dkt. 88. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, and for the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

---

[2] Also pending are two motions filed by Plaintiff. Plaintiff's Motion to Correct Docket Filing Error (Dkt. 118) will be granted, to the extent the Court has considered Plaintiff's additional exhibit in its ruling. Plaintiff's Fifth Motion for Extension of Time to File Response (Dkt. 117) will be granted, and the response is deemed timely filed.

## DISCUSSION

**1. Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id*.

The moving party bears the initial burden to show that each material fact cannot be disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show that the non-moving party is unable to

produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson*, 477 U.S. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

If the moving party meets this initial responsibility, the burden of production then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). If the plaintiff fails to produce evidence, or if the evidence produced is insufficient, the Court "is not required (or even allowed) to

assume the truth of the challenged allegations in the complaint." *Id*. A verified complaint

by a pro se prisoner "may be treated as an affidavit to oppose summary judgment, but

only to the extent it is 'based on personal knowledge' and 'sets forth specific facts

admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *opinion*

*amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (quoting *McElyea v.*

*Babbitt,* 833 F.2d 196, 197–98 & n. 1 (9th Cir.1987)).

 If a party "fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact," the Court may consider that fact to be undisputed. Fed.

R. Civ. P. 56(e)(2). The Court must grant summary judgment for the moving party "if the

motion and supporting materials—including the facts considered undisputed—show that

the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Where, as here, the party moving

for summary judgment would not bear the burden of proof at trial, that party may prevail

simply by "pointing out to the district court[] that there is an absence of evidence to

support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

 Statements in a brief, unsupported by the record, cannot be used to create a dispute

of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The

Ninth Circuit has "repeatedly held that documents which have not had a proper

foundation laid to authenticate them cannot support a motion for summary judgment."

*Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (internal

quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a),

is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must

contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

Affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In cases involving pro se inmates, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, though pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se inmate must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting

MEMORANDUM DECISION AND ORDER - 6

[plaintiff's] ... argument are in his unsworn district court responses to the defendants'
motion for summary judgment and to the district court's show-cause order").

2.    **Factual Background**

       This section includes facts that are undisputed and material to the resolution of the
issues in this case. Where material facts are in dispute, the Court has included Plaintiff's
version of facts, insofar as that version is not blatantly contradicted by clear documentary
evidence in the record. *See Scott*, 550 U.S. at 380. The Court takes judicial notice of the
relevant IDOC Standard Operating Procedures ("SOP") in public records available
online.[3] *See* http://forms.idoc.idaho.gov/WebLink/Browse.aspx?startid=99295&dbid=0
(last accessed March 23, 2023).

       Plaintiff believes that "the use of candles and incense are necessary at Catholic
services (i.e. Mass Rosary and Prayer services)." *Am. Compl.*, Dkt. 58, ¶ 26. He explains
the importance of these items as follows:

>                 During the catholic Liturgy, the sacramental celebration is
>         woven from signs and symbols. Light and darkness, wind and
>         fire, water and earth, the tree and its fruits speak of God and
>         symbolize both his greatness and nearness.
>
>                 … candles signify several things to Catholics and [Plaintiff's]
>         sincerely held beliefs. At Catholic Mass, the candles signify
>         the present [sic] of Christ, the light of the World who comes
>         down on it at the consecration. This is done by Confirmation
>         and the Eucharist, two of the sacraments of Christian
>         initiation within the catholic Church.

---

[3] A Court may take judicial notice of an adjudicative fact that is "capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be questioned," such as public
records. The IDOC SOPs qualify for such notice.

MEMORANDUM DECISION AND ORDER - 7

…

> The symbolism of candles for the Catholic faith is light is
> pure; it penetrates darkness; it moves with incredible velocity;
> it nourishes life; it illumines all that comes under its
> influence. Therefore it is a fitting symbol of God, the All
> Pure, the Omnipresent, the Vivifire of all things, the Source
> of all grace and enlightenment. It represents also our Blessed
> Savior and His mission. He was the light of the world, to
> enlighten them that sit in darkness and in the shadow of
> death.

*Id*. at ¶¶ 43–46 (internal quotation marks and citations omitted).

The Roman Catholic Diocese of Boise recognizes the importance of light and flame in its worship services but disagrees with Plaintiff as to the types of items that satisfy this requirement. The Diocese has provided evidence that battery-operated candles are sufficient for Catholic services and that the lack of an open flame does not affect the validity of the Mass. *Ex. to Decl. of Jeff Kirkman ("Kirkman Decl.")*, Dkt. 121-1, IDOC 0393–0396.

Prior to October 2016, the IDOC did not have a uniform policy regarding the use of open flames in indoor worship services in state prisons. There was no policy expressly prohibiting such practice, nor was there a policy expressly permitting it. In fact, IDOC leadership officials mistakenly believed that open flames were *not* being used in any IDOC facility for indoor religious activities—there was one prison that allowed such use,

MEMORANDUM DECISION AND ORDER - 8

but IDOC leadership were unaware of this.[4] *Decl. of Bret Kimmel ("Kimmel Decl."),* Dkt. 121, ¶ 21.

Once IDOC leadership learned of the lack of a uniform open flame policy, officials decided to address the need for "all facilities" to "conform their regulation to a single standard." *Kimmel Decl.*, ¶ 21. IDOC officials created a policy prohibiting the use of open flames in indoor activities, even religious activities. That policy, adopted in October 2016, is the one challenged in this action. The policy is enumerated as SOP 403.02.01.001, Religious Practices ("SOP 403") and is attached as an Appendix to this opinion.

SOP 403 *does* permit open flames to be used by prisoners; it merely requires that they be used outside. *See* SOP 403 at ¶ 22 ("Approved [ceremonial] items that require an open flame, such as candles and incense, may only be used in the outdoor worship area."). Inmates are also allowed to purchase LED tea-light candles for use in indoor worship services. *See Kirkman Decl.*, ¶¶ 5–6.

The primary reason proffered for limiting the use of open flames to outdoor religious activities is fire prevention. According to Bret Kimmel, the current Emergency Preparedness Coordinator for the IDOC:

> [I]ndoor use of candles and/or incense raises safety concerns regarding fire prevention. Staff and residents could be hurt in the rush to avoid the flames, if a conflagration were to break-out.

---

[4] Plaintiff alleges that, for decades, IDOC had always permitted open flames to be used in indoor religious services at multiple facilities. *Am. Compl.*, ¶ 27. The evidence does not support this assertion. Instead, the IDOC's former religious activities policy simply did not address the issue.

a.      The art and science of fire prevention has evolved over the years as catastrophic fires have claimed the lives of those trapped and unable to escape, effective mandating that new and improved prevention, detection, and fire extinguishment policies, protocols, and equipment be implemented. A fire that occurs in a prison or other correctional facility has inherent challenges as the purpose of a prison is to keep the occupants inside, and the typical goal of the immediate evacuation of all occupants from a facility does not apply to prisoners. Because of these inherent uniqueness's, prisons have some regulations that differ from the standards set for other structures.

*Kimmel Decl.*, ¶ 11.

Kimmel also lists numerous additional safety and security concerns with any open flame used inside of a prison, such as: (1) property damage; (2) discomfort of staff and inmates caused by smoke in a confined space; and (3) increased risk to air quality caused by the organic compounds released when candles and incense are used. *Id*. at ¶¶ 12–18. And, alarmingly, open flames in prisons can be and actually have been used as weapons; this includes the use of an open flame to heat, and thereby weaponize, maple syrup for use in an assault. *Id*. ¶ 19.

## 3.      Defendants Are Entitled to Summary Judgment on Plaintiff's Remaining Claims

For the following reasons, the Court will grant Defendants' Motion for Summary Judgment.

### A.      *Standards of Law Applicable to Plaintiff's Claims*

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA applies to entities receiving federal financial assistance. By accepting federal funds, however, states do not waive sovereign immunity to suits for money damages under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 280 (2011). Further, although the statute provides for injunctive relief, RLUIPA does not allow for monetary damages against individuals. *Wood v. Yordy*, 753 F.3d 899, 902-04 (9th Cir. 2014).

Under RLUIPA, the inmate bears the initial burden of showing that the challenged governmental action constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). For an official's action to constitute a substantial burden, it "must impose a significantly great restriction or onus upon [religious] exercise." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

MEMORANDUM DECISION AND ORDER - 11

If the inmate establishes "the prima facie existence" of a substantial burden on the exercise of the inmate's religion, then the burden shifts to prison officials "to prove that [the] substantial burden on [the inmate's] exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Warsoldier*, 418 F.3d at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party. If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (internal citations and quotation marks omitted). A defendant "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.

Although RLUIPA is to be construed broadly in favor of protecting an inmate's religious rights, *id*., the statute does not "elevate accommodation of religious observances over an institution's need to maintain order and safety," *Cutter*, 544 U.S. at 722. A prisoner's requests for religious accommodation must not override other significant interests within a prison setting. "Should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist

the imposition." *Id*. at 726. In the words of the Supreme Court, "context matters." *Id*. at 723 (quotation marks and alteration omitted).

The same standards apply to Plaintiff's state law claims brought pursuant to Idaho's Free Exercise of Religion Protected Act ("FERPA"). *See* Dkt. 93 at 2 ("In the Initial Review Order, Judge Nye determined that state FERPA claims are governed by the same standards as federal RLUIPA claims. Based on its own research, this Court agrees. The parties have not provided argument supported by law to show that the two statutes should not be construed similarly in all aspects.") (internal citation omitted).

### B.   *Plaintiff Cannot Establish a Substantial Burden on His Exercise of Religious Belief Based on the Prohibition of Open Flames in Indoor Religious Activities*

Defendants first argue that Plaintiff cannot meet his initial burden of showing that SOP 403 constitutes a substantial burden on Plaintiff's exercise of religious belief. The Court agrees.

Plaintiff has established the sincerity of his belief that open flames are required for the exercise of his religious beliefs. *See Cutter*, 544 U.S. at 725 n.13 (2005). Plaintiff is a devout Roman Catholic, and he believes that using candles and incense in Catholic worship services are required. The contrary opinion of the Roman Catholic Diocese does not affect this prong of the RLUIPA or FERPA analysis—it is *Plaintiff's* belief that matters for purposes of determining whether a religious belief is sincerely held.

However, Plaintiff has failed to bring forth any evidence that the prohibition on indoor open flames constitutes a substantial burden on that sincerely held religious belief. *See Warsoldier*, 418 F.3d at 994. Plaintiff does not dispute that he is permitted to use

MEMORANDUM DECISION AND ORDER - 13

open flames in his worship services—he simply must use them *outside*. The IDOC has

outdoor worship facilities that prisoners are allowed to utilize, and Plaintiff has submitted

absolutely no evidence that he is unable to do so.

Plaintiff cannot show that SOP 403 imposes "a significantly great restriction or

onus" on Plaintiff's religious exercise. *San Jose Christian College*, 360 F.3d at 1034.

Therefore, Plaintiff has failed to establish a prima facie case of an RLUIPA or FERPA

violation, and Defendants are entitled to summary judgment.

      i.      <u>Even if SOP 403 Were a Substantial Burden on Plaintiff's Exercise
of Religious Belief, Defendants Have Established that SOP 403 Is
the Least Restrictive Means of Furthering a Compelling
Governmental Interest</u>

As explained above, Plaintiff's failure to establish a substantial burden on his

religious exercise entitles Defendants to summary judgment on that basis alone.

However, the Court goes on to consider whether—if Plaintiff *were* able to show such a

substantial burden—Defendants are nonetheless entitled to summary judgment. *See*

*Warsoldier*, 418 F.3d at 999.

Defendants have shown that prison officials have compelling interests in

decreasing the risk of fire, in limiting the availability of items that prisoners can use to

make weapons, and in reducing the likelihood of real or personal property damage. In

addition, as other courts have noted, the wax in candles "can be used to made key

molds," and "incense can be inhaled and used to mask the odor of illegal substances."

*Childs v. Duckworth*, 705 F.2d 915, 921 (7th Cir. 1983); *see also Dettmer v. Landon*, 799

F.2d 929, 933 (4th Cir. 1986) (describing prison security official's opinion that candles

MEMORANDUM DECISION AND ORDER - 14

"can be used as timing devices and to make impressions of keys" and that incense "can be used to disguise the odor of marijuana"). All of these are safety and security interests that are unquestionably compelling.

The question then becomes whether SOP 403 is the least restrictive means of furthering the IDOC's interests in inmate and staff safety, prison security, and fire prevention. Defendants have met their burden of showing that it is.

SOP 403 does not prohibit all use of open flames in religious activities—only *indoor* religious activities. A more restrictive means would have been to disallow any open flame on prison grounds, even in outdoor worship areas. Defendants have chosen not to do so, but instead to accommodate inmates who wish to use candles and incense by allowing them to do so in an environment that poses less risk to safety and security.

Plaintiff has not rebutted Defendants' evidence that SOP 403 is the least restrictive means of furthering prison officials' compelling interests in safety, security, and fire prevention. Therefore, Defendants are entitled to summary judgment on this prong of the RLUIPA and FERPA analyses as well.

## CONCLUSION

Defendants have shown that Plaintiff cannot establish a prima facie case that SOP 403 substantially burdens the exercise of his religious beliefs. Defendants have also shown that SOP 403 is the least restrictive means of furthering a compelling governmental interest, and Plaintiff has not come forward with evidence establishing a genuine dispute of material fact. For these reasons, Plaintiff's RLUIPA and FERPA claims necessary fail.

MEMORANDUM DECISION AND ORDER - 15

## ORDER

**IT IS ORDERED:**

1.   Plaintiff's Fifth Motion for Extension of Time (Dkt. 117) is GRANTED.

2.   Plaintiff's Motion to Correct Docket Filing Error (Dkt. 118) is GRANTED to the extent that the Court has considered the exhibit at Docket 118-1 as support for Plaintiff's opposition to the Motion for Summary Judgment.

3.   Defendants' Motion for Summary Judgment (Dkt. 109) is GRANTED, and this entire action is DISMISSED with prejudice.

4.   Defendants' Motion to Strike Plaintiff's unauthorized sur-reply (Dkt. 123) is DENIED AS MOOT.

DATED:  April 3, 2023

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**APPENDIX**

| Idaho Department of Correction | Standard Operating Procedure | Title:<br>**Religious Activities** | | Page:<br>1 of 23 |
|---|---|---|---|---|
| | | Control Number:<br>**403.02.01.001** | Version:<br>**8.0** | Adopted:<br>5-1-1996 |

**Chad Page, chief of the division of prisons, approved this document on 01/30/2019.**

**Open to the public:** ☒ Yes

## SCOPE

This standard operating procedure applies to all Idaho Department of Correction (IDOC) correctional facilities, including community reentry centers (CRCs), inmates, staff members, volunteer and religious activity coordinators (VRCs), and faith-based volunteers.

| **Revision History** |
|---|
| Revision Date (01/30/2019) version 8.0: Added section allowing Level 2 volunteers to supervise limited service volunteers; revised terminology and provided clarification regarding size and material of religious cards in Appendix D, removed religious beard exception information. |

## TABLE OF CONTENTS

Board of Correction IDAPA Rule Number 06.01.01.403 ........................................................ 2

Policy Control Number 403 ........................................................................................................ 2

Purpose ....................................................................................................................................... 2

Responsibility ............................................................................................................................ 2

Standard Procedures ................................................................................................................. 3

1. Introduction ......................................................................................................................... 3

2. Religious Volunteers .......................................................................................................... 3

3. Religious Activity Oversight ............................................................................................... 4

4. VRC Responsibilities .......................................................................................................... 4

5. Prohibited Activities ........................................................................................................... 4

6. Designating Worship Areas and Scheduling Religious Activities .................................... 5

7. Suspending, Reducing, or Delaying Religious Activities ................................................. 5

8. Work or Programming Conflicts ......................................................................................... 6

9. Religious Activity Protocols ............................................................................................... 6

10. Inmates under the Sentence of Death .............................................................................. 8

11. Inmates in Long-term Restrictive Housing ...................................................................... 8

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>2 of 23 |
|---|---|---|---|

12. Inmates in Hospital ................................................................................................. 9

13. Religious Use of Wine and Other Sacraments ...................................................... 9

14. Sweat Lodge .......................................................................................................... 9

15. Religious Activity Completion Certificates ........................................................... 11

16. Religious Activity Review Process ....................................................................... 12

17. Religious Activity Committees ............................................................................. 12

18. New or Unfamiliar Religious Components ............................................................ 13

19. Religious Diets .................................................................................................... 16

20. Religious Literature ............................................................................................. 16

21. Religious Observance .......................................................................................... 17

22. Religious Activity Center Group Ceremonial Items ............................................. 19

23. Budgets ............................................................................................................... 19

24. Donations for Group Ceremonial Items ............................................................... 19

25. Special Fund Accounts ........................................................................................ 20

26. General Use Religious Activity Donations ........................................................... 21

Definitions ................................................................................................................. 22

References ................................................................................................................. 22

## BOARD OF CORRECTION IDAPA RULE NUMBER 06.01.01.403

Inmate Religious Practices

## POLICY CONTROL NUMBER 403

Religious Practices

## PURPOSE

The purpose of this standard operating procedure (SOP) is to provide guidance and direction for recognized religious activities and to provide procedures for reviewing inmate requests for accommodations of religious activities not covered in this SOP.

## RESPONSIBILITY

### *Chief of the Division of Prisons*

The chief of the division of prisons is responsible for:

- Designating persons to serve on the religious activities review committee (RARC)

- Serving as the approval authority for new and unfamiliar religious component requests

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>3 of 23 |
| --- | --- | --- | --- |

### CRC Managers

The CRC managers are responsible for designating persons to serve on facility religious activities oversight committee (RAOC).

### Division VRC

The division VRC is responsible for:

- Developing and delivering training to religious volunteers

- Overseeing religious activities in facilities

- Developing and delivering training to facility VRCs and staff members

### Facility VRC

The Facility VRC is responsible for:
- Coordinating and overseeing religious activities in facilities
- Recruiting religious volunteers if the need arises
- Maintaining volunteer records

### Facility Heads

Facility heads are responsible for:

- Implementing this SOP

- Ensuring that staff members adhere to the provisions provided herein

- Designating a person to serve as the facility VRC if no contract position exists

- Designating a religious activity oversight committee (RAOC)

## STANDARD PROCEDURES

### 1. Introduction

The IDOC provides reasonable and equitable opportunities to inmates of all faiths to pursue religious beliefs and activities, when those opportunities can be provided within budgetary limitations and are consistent with the safe and orderly operation of a facility and its custody level.

The IDOC does not interfere with an inmate's religious belief. However, the IDOC has a compelling government interest to maintain safety and security in its facilities. Therefore, the IDOC may substantially burden an inmate's exercise of religion when the application of the burden is based on a compelling IDOC interest and it is the least restrictive means of furthering that interest.

### 2. Religious Volunteers

Religious volunteers conduct religious ceremonies and provide religious instruction and spiritual guidance to inmates. Religious volunteers provide teaching, worship, and pastoral care for the inmates in the facility in which they volunteer. For more information regarding religious volunteers, see SOP 606.02.01.001, *Volunteer Services in Correctional Facilities.*

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>4 of 23 |
|---|---|---|---|

3. **Religious Activity Oversight**

The oversight of religious volunteers and religious activities is accomplished using a combination of IDOC and contract staff.

**IDOC staff** –When a facility does not have a contract VRC, the facility head or designee must designate an IDOC staff member to serve in that role. At the facility head's or designee's discretion, this designated staff member may continue performing the primary job duties for which he was hired and as a secondary job duty, oversee religious volunteers and religious activities as an extra duty.

**Contract staff** – In accordance with the contract that establishes volunteer and religious activity services, there is a volunteer and religious activity coordinator (VRC) at each facility. Contract staff provides most of the coordination and oversight of religious activities.

For the purpose of this SOP, the acronym VRC is used to describe both IDOC staff and contract staff serving in the oversight of religious volunteers and religious activities.

4. **VRC Responsibilities**

In addition to the information provided in the 'responsibility' section and section 3, facility VRCs and contract staff are responsible for the following:

***Religious Volunteers***

VRCs are responsible for locating, developing, and managing religious volunteers who are representative of the facility's inmate population.

***Inmate Marriages***

In accordance with SOP 311.02.01.001, *Marriage Procedures for Inmates*, VRCs, upon request, must assist an inmate with finding a qualified person to conduct the marriage ceremony. Inmate marriages must be requested, processed, and coordinated in accordance with SOP 311.02.01.001.

***Inmate Family Deaths or Personal or Family Crisis***

VRCs may be involved when inmates receive notices of a family death or personal or family crisis. Each facility must outline in a field memorandum the process for dealing with family death or personal or family crisis calls.

5. **Prohibited Activities**

The following activities are prohibited:

- Animal sacrifice
- Belittling or ridiculing other religions
- Curses, spells, or rituals meant to cause harm, distress, problems, or other unwelcome events
- Consumption of alcohol
- Consumption of illegal substances
- Consumption of tobacco
- Domestic or foreign terrorism
- Nudity

Idaho Department of Correction

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>5 of 23 |
|---|---|---|---|

- Inmate organizations or practices that put inmates in positions of power, authority, or leadership over other inmates

- Paramilitary exercises

- Profanity

- Proselytizing (coercing, harassing, or attempting to convince an inmate to change his religious affiliation)

- Self-defense training

- Self-mutilation

- Sexual acts

- Superiority of one race or religion over another

- Use or display of weapons (or what appear to be weapons)

- Violence

## 6. Designating Worship Areas and Scheduling Religious Activities

Facility heads or designees must designate areas for religious activities that fairly and equitably accommodate the needs of all religious groups in the inmate population. This includes one outdoor worship area established and maintained in a location that is suitable, secure, and in an area that is reasonably separated from non-participating inmates, but staff can supervise or observe. However, outdoor worship areas are not allowed where building design or security considerations prohibit its construction and/or use. The appropriate division chief or designee, or CRC reentry manager or designee, must approve any exception where an outdoor worship area is not provided.

The facility VRC must schedule and oversee religious activities within the facility's master schedule. When scheduling religious activities, the facility VRC must consider both the availability of IDOC staff or religious volunteer supervision and the need to share the available time and space among the faith groups. Program schedules must be posted in English and Spanish on bulletin boards that are clearly visible to the inmate population.

On a volunteer basis, inmates in general population can access religious resources, activities, and instruction consistent with the custody level of the facility. Inmates in restrictive housing may access religious activities with religious volunteers as coordinated by the facility VRC.

Each month the VRC must submit the following month's schedule of religious activities to the assigned deputy warden or second-in-command for approval. The deputy warden or second-in-command must review religious activities at least annually.

## 7. Suspending, Reducing, or Delaying Religious Activities

In an emergency, such as a disturbance, the incident commander can suspend religious activities. Any such suspension, reduction, or significant delay must be reported to the facility head or designee.

In a situation such as fog, facility lockdown, or staff shortage, the facility head or second-in-command can temporarily suspend, reduce, or delay religious activities. If the reduction of

| Control Number: 403.02.01.001 | Version: 8.0 | Title: Religious Activities | Page Number: 6 of 23 |
|---|---|---|---|

religious activities extends beyond one week, the facility head or second-in-command must notify the chief of the division of prisons or CRC reentry manager, as applicable.

## 8. Work or Programming Conflicts

If a facility work assignment or programming interferes with an inmate's ability to practice the tenets of his faith, the inmate may discuss the conflict with his work supervisor or programming staff to see if an adjustment in duties or scheduling could eliminate the conflict. Exceptions granted to a facility work assignment or programming must be documented in the Offender Management System as a 'special concern' c-note entry.

If the conflict is concerning a special event or religious holy day, no job reassignment or permanent schedule change is necessary, and time off should be accommodated if possible. The inmate must submit a written request to his work supervisor or programming staff at least 48 hours before a special event or religious holy day.

If the conflict cannot be resolved, the inmate may submit a written request to the facility VRC for assistance. The facility VRC must take the request to the religious activities oversight committee (RAOC) for discussion, and if the issue cannot be resolved at the facility level, the RAOC must forward the issue to the Religious Activity Review Committee (RARC) for review and decision.

Conflicts with work assignments that are outside of the facility such as prison industry enterprise (PIE) programs, vocational work projects, or private work force job at a CRC must be resolved with the employer, not the IDOC.

## 9. Religious Activity Protocols

### Languages Allowed

Sermons, teachings, and admonitions must be delivered in English. However, inmates can recite customary prayers in the language required by their religion or faith.

The facility head or designee can approve activities delivered in other languages if it meets the overall needs of the inmate population. Use Appendix B, *Religious Activity Foreign Language Approval Log* to document approval of foreign language activities.

### Supervision

The supervision definitions below are for the purpose of this SOP only.

**Direct supervision** means that a staff member, VRC, or religious volunteer must be physically present in the same room or area as the inmates being supervised. The staff member, VRC, or religious volunteer must not be separated from the inmates by glass, wall, or partition. If the staff member, VRC, or religious volunteer leaves that area, he is no longer in direct supervision of the inmates, even if he is in the same building. Direct supervision cannot be conducted from a tower or video technology.

**Indirect supervision** means that a staff member, VRC, or religious volunteer is not physically present in the same area as the inmates being supervised but is in a position to observe the inmates through a direct line of sight, through a window or video technology.

**Constant** means continual from the beginning of the assembled period to the end of the assembled period.

Idaho Department of Correction

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>7 of 23 |
| --- | --- | --- | --- |

**Periodic** means at a specified interval (as described in field memorandum) during the assembled period.

**Intermittent** means at unspecified intervals during the assembled period.

Religious activities must be supervised as follows:

### *Inmate-led Religious Activities*

- Minimum Custody

  - Requires **periodic direct or indirect supervision** as defined above and as described in the facility's field memorandum.

  - Staff may provide **constant direct or indirect supervision**.

- Medium Custody

  - Requires prior authorization by the facility's deputy warden or second-in-command and must have **periodic direct or indirect supervision** as defined above and as described in the facility's field memorandum.

  - Staff may provide **constant direct or indirect supervision**.

- Close Custody

  - Requires prior authorization by the facility's deputy warden or second-in-command and must have **direct supervision** by a staff member, VRC, or religious volunteer, **and constant direct or indirect supervision** by a security staff member.

### *Volunteer-led Religious Activities*

All religious activities led by a religious volunteer who has restricted status (see SOP 606.02.01.001, *Volunteer Services in Correctional Facilities*) require **constant direct supervision** as defined above.

- Minimum Custody

  - Requires **periodic direct or indirect supervision** as defined above and as described in the facility's field memorandum and **intermittent direct or intermittent indirect supervision** by a security staff member

- Medium Custody

  - Requires **periodic direct or indirect supervision** as defined above and as described in the facility's field memorandum and **intermittent direct or intermittent indirect supervision** by a security staff member

- Close Custody

  - Requires **constant direct and indirect supervision** by a staff member or facility VRC and **intermittent direct or intermittent indirect supervision** by a security staff member

Any religious activity provided by a limited-service volunteer requires **constant direct supervision** by IDOC staff members or a Level 2 volunteer.

Idaho Department of Correction

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | | Page Number:<br>8 of 23 |
|---|---|---|---|---|

### Supervision Exceptions

The facility head or designee can approve exceptions to the supervision requirements. While it is preferable to have religious volunteers for every religious group, sometimes religious volunteers are not available in the community. If a staff member, facility VRC, or religious volunteer cannot directly supervise an activity, the facility head or designee must ensure that security staffing and other activities are sufficient to maintain order and safety and are in accordance with the supervision requirements described in this section.

### Participation: CRC Inmates

Inmates housed in CRCs may be allowed to participate in religious services in the community. For further information, see, SOP 605.02.01.001, *Furlough Program for Inmates* and SOP 606.02.01.001, *Volunteer Services in Correctional Facilities.*

### Staff Members and VRCs

With the exception specified in section 10, inmates under the sentence of death, staff members, and VRCs are prohibited from conducting, leading, volunteering, or participating in religious activities or services. As directed by the facility head or designee, staff members and/or VRCs are required to provide supervision for services and activities that do not have a religious volunteer. Staff members and VRCs must monitor religious volunteer-led activities and services to ensure that the standards established in this SOP are followed. In addition, facility VRCs must provide monitoring as established in the volunteer and religious activity coordination contract.

## 10. Inmates under the Sentence of Death

SOP 135.02.01.003, *Execution Procedures*, provides specific guidelines regarding access to inmates who are under the sentence of death once a court has issued a death warrant. During that time, the inmate has increased access to certain individuals including a spiritual advisor of his choice. A VRC may be required to assist the IDOC in locating a spiritual advisor for such an inmate. The IDOC does not require that a VRC serve as spiritual advisor or participate in any procedure directly connected to the execution process, with the exception of assisting with finding a spiritual advisor as needed. However, a VRC may serve as a spiritual advisor if (a) the inmate requests the VRC to serve as his spiritual advisor, (b) the VRC is willing to serve as the inmate's spiritual advisor, and (c) the facility head approves.

## 11. Inmates in Long-term Restrictive Housing

### Facility VRC Requirements

The facility VRC providing service at any facility with long-term restrictive housing is required to visit each unit and tier at least once each month, making himself available to any inmate with questions or concerns regarding religious or volunteer activities. The facility VRC must document such visits and submit the documentation to the division VRC on a monthly basis in a format determined by the division VRC.

### Inmate Request for Access to a Religious Advisor

Inmates in restrictive housing can submit a written request to the facility VRC requesting access to a religious advisor. The facility VRC must contact a religious volunteer or approved representative of the faith and arrange a visit consistent with security and order of the facility. Religious volunteers and faith group representatives must always be escorted or under staff observation when visiting inmates in restrictive housing.

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>9 of 23 |
|---|---|---|---|

## 12. Inmates in Hospital

Inmates who are hospitalized can request access to representatives of their faith group. The facility head or designee must approve any visit between a religious representative and an inmate hospitalized in a hospital that is outside the secure confines of the facility. The facility head may determine the frequency of such visits.

## 13. Religious Use of Wine and Other Sacraments

Sacraments such as wine can only be used under the direct supervision of a staff member, facility VRC, or level-2 religious volunteer. When wine is used as a sacrament, the minister or priest may consume no more than three ounces of wine. Inmates shall not consume any wine.

Sacraments such as wine must be approved by the facility head or designee and be removed by a religious volunteer from the facility after each use.

The facility head or designee must document the approval in a memorandum and forward the memorandum to the facility VRC and other applicable staff. Normally, the memorandum must be reviewed at least annually and reissued if needed. The facility VRC must keep a copy of the memorandum on file in the religious activity center or chapel and forward a copy to the chief of the division of prisons or CRC reentry manager, as applicable.

## 14. Sweat Lodge

The IDOC recognizes that sweat lodge ceremonies are an important part of Native American culture. The following procedures have been established regarding the procurement of rocks and firewood. Sweat lodges are not open to other religions or groups and are specific to the practice of the Native American religion. However, sweat lodge ceremonies are open to all IDOC inmates who wish to practice the Native American religion. During some portions of a sweat lodge ceremony, a staff member, facility VRC, or religious volunteer may not have a direct line of sight to inmates but must observe the sweat lodge.

Each month, the facility VRC must document rocks and firewood supplied, collected, and donated using the *Sweat Lodge Firewood and Rock Tracking Log.*

### *Rocks for Sweat Lodge*

Each facility that has a sweat lodge must develop a process to provide rocks for use during the sweat lodge ceremony.

At medium custody facilities, the rock storage area must be outside the perimeter fence. A staff member must provide direct supervision when rocks are moved inside the perimeter and when unserviceable rocks are removed.

The rock supply must meet the following criteria:

- At least 100 rocks per year

- Be approximately eight to 10 inches in diameter

- Be stored in an area the facility head or designee has designated

Each facility that has a sweat lodge must develop a process for collecting the rocks. Inmates who are classified **minimum custody** and approved to work away from the facility (off facility grounds) do the rock collection for **minimum custody and adjacent medium custody facilities**. Staff supervises rock collection crews as determined by the facility head or designee.

| Control Number: 403.02.01.001 | Version: 8.0 | Title: Religious Activities | Page Number: 10 of 23 |
|---|---|---|---|

Rocks are collected from IDOC property, or other state of Idaho, federal, or private property where the owner or management authority has granted the IDOC permission to collect rocks.

If rocks cannot be collected legally from a location that is reasonably accessible to the IDOC, then rocks may be donated.

### Firewood for Sweat Lodge Ceremonies

Sweat lodges are authorized to use up to one cord of firewood per month for a total of 12 cords of firewood per year at each facility with a sweat lodge. The chief of the division of prisons or the division chief responsible for CRCs or their designee must approve any firewood use exceeding the 12-cord per year limit.

The IDOC will reject any firewood that poses a security risk or contains contraband.

In the sweat lodge area, there will be a rack that holds one cord of firewood. Before the first sweat lodge ceremony of each month, inmates, under the direction and supervision of staff, fill the rack with firewood from the designated storage area. Firewood stored in the designated storage area must be neatly stacked.

Firewood for the sweat lodge is provided by one or more of the following methods **in the following order**:

1. Collected from IDOC-owned property or other authorized property
2. Donated Firewood
3. Purchased Firewood

### Collected From IDOC-owned Property or Other Authorized Property

If available, firewood may be collected from IDOC property. Inmates approved for work assignments collect the firewood under staff supervision as determined by the facility head or designee. Collected firewood may be shared with neighboring IDOC facilities or stockpiled for future use.

Firewood can also be collected from other sources such as state of Idaho, federal, or private land if the firewood is legally obtained and reasonably accessible as part of vocational work projects and does not cause the IDOC to incur additional staff or resource expenses.

### Donated Firewood

Designated staff and facility VRCs will solicit for firewood donations. Examples of sources for donated firewood include, but are not limited to, mill ends from lumberyards or construction companies and firewood from individuals, organizations, or businesses. All firewood donations are accepted, unless the firewood is unfit to burn, unsuitable for use, or contains contraband. The shift commander or designee is responsible for inspecting firewood before it is moved inside the facility perimeter. Inspections may include a physical search and/or use of drug-detection canines. Donation sources and complete donations may be rejected if contraband, such as drugs, weapons, or tobacco is found in the firewood.

Donated firewood must be free of glues, chemical treatment, nails, or any other foreign objects that pose a safety or security risk. Any firewood received that has glue or other chemical treatment must not be used for ceremonies and must be disposed of or destroyed.

| Control Number: 403.02.01.001 | Version: 8.0 | Title: Religious Activities | Page Number: 11 of 23 |
|---|---|---|---|

Facility heads or designees must designate an area for receiving and storing donated firewood. At medium custody facilities, the storage area must be outside the perimeter fence. When firewood is needed, it is moved inside the perimeter under the direct supervision of IDOC staff.

The facility VRC coordinates the delivery of firewood, and each facility head must describe the reception processes in a field memorandum to ensure that unscheduled donations are not turned away. Donations may be shared with neighboring IDOC facilities or stockpiled for future use.

### Purchased Firewood

Each facility with a sweat lodge must budget a minimum of three hundred dollars per year to be used to purchase firewood for the sweat lodge ceremony. However, this money is only to be used if collected or donated firewood becomes unavailable or is expected to be unavailable for at least a two-week period. If the purchase of firewood becomes necessary, it is purchased from local vendors at the current market price.

### Firewood Fund Donations

In addition to the three hundred dollars per year, the IDOC will match dollar-for-dollar money donated to a fund dedicated to the purchase of firewood at each facility with a sweat lodge. The matching funds will not reduce the annual minimum budgeted amount of three hundred dollars. The donated money and the IDOC match are not used until the three hundred dollar annual budget has been spent. Any unspent donated money continues to accumulate; however, the state of Idaho match must not exceed the market price of six cords of firewood during a fiscal year.

Contributions to the firewood fund can be made from inmates or from private individuals, organizations, or agencies if inmates have not used coercion or committed other IDOC rule violations as described in SOP 318.02.01.001, *Disciplinary Procedures: Inmate.* The facility donation match will not exceed six cords of firewood per sweat lodge during the current fiscal year and only at a rate of one cord of firewood per month.

Only inmates actively participating in the sweat ceremonies can contribute to the fund. To qualify as an active participant, an inmate must have attended the sweat lodge ceremony at least 60% of the time during the 90-day period just before the date of the donation. The facility head or designee can make an exception because of medical conditions that limit participation and/or an inmate being new to the facility.

Each facility with a sweat lodge must provide inmates information on how to donate to the firewood fund. Upon request, the division of prisons will make available to sweat lodge participants the firewood fund balance and expenditure records (*Sweat Lodge Tracking Log*).

## 15. Religious Activity Completion Certificates

Religious activities, education, and services are not IDOC-approved core or ancillary programs or treatment. Inmates are not ordered to complete or attend religious activities as part of their treatment or release plans. To avoid confusing the attendance or completion of a religious activity with an IDOC core or ancillary program, only a *Certificate of Completion: Faith-based Class* can be used for completion or participation in faith-based religious activities, education, and services.

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>12 of 23 |
|---|---|---|---|

## 16. Religious Activity Review Process

The IDOC may conduct periodic reviews of religious practices and volunteer programs at IDOC facilities. The division VRC provides the report format and reporting instructions. When a religious activity review is conducted, the reports are sent to the division VRC. The division VRC compiles the reports and presents the results to the department leadership.

The facility VRC's compile monthly reports and submit them to the division VRC monthly. At a minimum, the reports must contain the following:

- Summarized *Inmate Concern Form* tracking data
- Inmate participation numbers
- Religious volunteer tracking information
- Religious activity by faith group
- Special events
- New and unfamiliar religious practice requests
- Donations
- Restrictive housing visits

## 17. Religious Activity Committees

### Religious Activity Oversight Committee (RAOC)

Each facility head must designate a committee to oversee religious activities, consisting of at least three individuals and must include the facility VRC and a deputy warden or second-in-command. A lieutenant or higher rank may be used in lieu of a deputy warden of security or a program manager may be used in lieu of a deputy warden of operations; however, at least one deputy warden must serve on this committee. The division VRC may participate in any RAOC meeting at any time.

This committee oversees religious activities at the facility and communicates with the division's religious activity review committee (RARC).

CRC managers must designate a similar committee; however, the membership of the committee may vary but must include the community reentry center VRC and a member of the CRC's management team.

RAOC must meet (see section 19) when an inmate request for a new or unfamiliar request is received. The RAOC is encouraged to meet more frequently to review facility religious activities, even when there are no requests.

### Religious Activity Review Committee (RARC)

The division of prisons chief must designate a division RARC, consisting of at least three individuals and must include a deputy attorney general (DAG) who represents the IDOC to serve as legal advisor and the division VRC. A deputy chief or their designees may attend the RARC meeting. In the event that the request came from a CRC, a deputy chief or designee from the division responsible for CRCs must be included in the committee.

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>13 of 23 |
|---|---|---|---|

The RARC is responsible for making recommendations (in writing) using a *Request for New or Unfamiliar Religious Component*, and submitting it to the division of prisons chief or designee for the final decision.

## 18. New or Unfamiliar Religious Components

SOP 320.02.01.002, *Property: Religious,* identifies personal ceremonial items and group ceremonial items to accommodate most religions or faiths.

If an inmate's religion or faith requires a component that is not approved in this SOP or 320.02.01.002, this section provides a method for the IDOC to consider new or unfamiliar religious property and/or practices. Inmates can request consideration of a new or unfamiliar religious property and/or practice by submitting an *Inmate Concern Form* to the RAOC through the facility VRC. In order for the IDOC to consider the request, the inmate must submit the request on an *Inmate Concern Form*. If there is a request for a new or unfamiliar religious component to review, the RAOC must convene by the 5th working day of the month after the request is received and must submit their recommendation to the division VRC by the 10th working day of the month after the request is received. The RARC will submit their recommendation to the Chief of Prisons no later than 30 calendar days after receipt of the RAOC recommendation. The Chief of Prisons will submit the final decision no later than 14 calendar days upon receipt of the RARC recommendation.

### RAOC Role

The RAOC's role is to provide a detailed description of the component and/or practice, consider whether restricting the practice substantially burdens the inmate's ability to practice their faith, determine if there is any compelling government interest to restrict the practice, and if a compelling government interest exists, identify least restrictive alternatives to allowing the practice as requested. Each least restrictive alternative must be given consideration, and if there is a compelling government interest to restrict an alternative, then the compelling government interest must be explained. Then the RAOC must consider the next least restrictive alternative and so forth until either a least restrictive alternative is recommended, or all least restrictive alternatives were considered, but rejected.

Compelling government interests must be explained in detail. For example:

- Do not state that SOPs do not allow the component or practice.
- Do explain in detail the specific risk to safety, security, or inability to provide resources necessary to permit the component or practice.

Individuals on the RAOC also serve different roles. The facility VRC's role is to obtain details and clarification of the request from the inmate, research the component or practice to provide a clear understanding of the request, and to determine what, if any, least restrictive alternatives exist. The facility VRC's role is to assist the IDOC by identifying least restrictive options for the religious component or practice. The facility VRC's role is not to advocate against the request.

The IDOC staff role is to determine if a compelling government interest exists to restrict the component or practice and apply that analysis to each alternative until one is recommended or until the alternatives are exhausted.

Input from the facility level is critical to provide quality information so the division of prisons chief or designee can make an informed decision.

Idaho Department of Correction

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>14 of 23 |
|---|---|---|---|

### *RARC Role*

The division RARC's role is to review the RAOC's recommendation and consider how the recommendation would affect the division if implemented. The division RARC may have additional information or a different perspective. For example, something that seems acceptable for one inmate at a small minimum custody facility might create a large problem if implemented at all facilities for all inmates.

The division RARC also considers input from a DAG who represents the IDOC.

The division RARC periodically reviews and updates applicable SOPs to implement decisions made that affect the division as a whole.

The combined viewpoints of the RAOC and division RARC provide the division of prisons chief or designee with vital information to make a decision and determine if the decision is isolated to one inmate or is implemented at all facilities.

### *Request for a New or Unfamiliar Religious Component*

When an inmate requests new or unfamiliar religious components or practices, use these process steps:

| Functional Roles and Responsibilities | Step | Tasks |
|---|---|---|
| **Inmate(s)** | 1 | Submit an *Inmate Concern Form* to the facility VRC. |
| **Facility VRC** | 2 | • Review the request, and if necessary, obtain more information from the inmate.<br><br>• Complete sections 1, 2, and 3 of the *Request for New or Unfamiliar Religious Component.*<br><br>• Forward the *Request for New or Unfamiliar Religious Component* and the *Inmate Concern Form* to the facility RAOC. |

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>15 of 23 |
|---|---|---|---|

| Functional Roles and Responsibilities | Step | Tasks |
|---|---|---|
| **RAOC** | 3 | • Review the submitted *Request for New or Unfamiliar Religious Component* and *Inmate Concern Form*. Determine if additional research or documentation is required. If additional research or documentation is required, return the *Request for New or Unfamiliar Religious Component* to the facility VRC with instructions and timeline for completion.<br><br>• If the *Request for New or Unfamiliar Religious Component* is completed adequately, consider whether the component or practice would substantially burden the inmate's ability to practice their faith. Determine if there is any compelling government interest or penological objective being met by restricting the request (i.e. risk to safety, security, or good order of the facility may be a compelling government interest).<br>• Complete sections 4, 5, 6, and 7 of the *Request for New or Unfamiliar Religious Component*.<br><br>• Forward *Request for New or Unfamiliar Religious Component* (the Word version) and copy of the *Inmate Concern Form* via email to division of prisons VRC by the 10th working day of the month. |
| **Division of Prisons VRC** | 4 | • Review the *Request for New or Unfamiliar Religious Component* and *Inmate Concern Form*.<br><br>• If the *Request for New or Unfamiliar Religious Component* requires additional information, return it to the facility RAOC chairperson with instructions and a timeline for completion.<br><br>• If the *Request for New or Unfamiliar Religious Component* is complete, forward it and a copy of the *Inmate Concern Form* to the RARC. |
| **RARC** | 5 | • Review the *Request for New or Unfamiliar Religious Component* and *Inmate Concern Form* and if necessary, request additional information from the submitting facility RAOC or other sources. The division RARC may solicit additional information or input from other facility RAOCs.<br><br>• Make a recommendation on the *Request for New or Unfamiliar Religious Component* and forward it with a copy of the *Inmate Concern Form* to the chief of the division of prisons or designee no later than 30 calendar days upon receipt of the RAOC recommendation. |

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>16 of 23 |
|---|---|---|---|

| Functional Roles and Responsibilities | Step | Tasks |
|---|---|---|
| **Division of Prisons Chief or Designee** | 6 | • Review the recommendation and make a decision.<br>• Forward the completed *Request for New or Unfamiliar Religious Component* to the division RARC or designee no later than 14 calendar days upon receipt of the RARC recommendation. |
| **RARC or designee** | 7 | • Forward the completed *Request for New or Unfamiliar Religious Component* to the affected facility RAOC.<br>• Post the completed *Request for New or Unfamiliar Religious Component* in an online-centralized location where all RAOC's can access the information.<br>• File the completed *Request for New or Unfamiliar Religious Component* that has the original signature.<br>• If necessary, implement the process steps needed to get the component added to or addressed in all affected Idaho Administrative Procedure Act (IDAPA) rules, IDOC policies, and SOPs. |
| **Facility RAOC Chairperson** | 8 | • Implement the decision and inform the inmate and the RAOC. |
| | 9 | • In those cases involving an individual inmate and the approval of property or other practice that is not routine, not approved at other facilities, or will not be added to the SOP, document the decision in CIS as a 'special concern' c-note entry.<br>• If warranted, issue a memorandum to the inmate and other staff as needed. |

## 19. Religious Diets

Inmates must choose from the IDOC diet options to meet the needs of their religion's dietary requirements.

## 20. Religious Literature

Facility VRCs must collect all literature that volunteers bring in and mail sent from organizations for general distribution to include booklets, books, magazines, posters, pamphlets, etc. The VRC must submit the materials to the facility head or designee for approval before the literature is distributed or posted. Literature that poses no problems is made available to the inmates.

Inmates may donate religious books with the understanding that the donated religious books become property of the state of Idaho, and the IDOC may dispose of or redistribute the books to other facilities at its discretion.

Personal mail sent to individual inmates is processed through the mailroom. If the mailroom staff believes the literature does not comply with SOP 402.02.01.001, *Mail Handling in Correctional Facilities*, the literature must be forwarded to the deputy warden or second-in-command.

| Control Number: 403.02.01.001 | Version: 8.0 | Title: Religious Activities | Page Number: 17 of 23 |
|---|---|---|---|

If the facility head or second-in-command determines that any personal religious literature requested by, sent to, or obtained from an inmate does not meet the requirements of applicable SOPs, the literature must be processed as a new or unfamiliar religious component (see section 19).

Unsolicited literature sent to the facility that does not meet applicable SOP standards is destroyed. Literature brought by religious volunteers that does not meet applicable SOP standards is returned to the religious volunteer.

Religious books, magazines, or periodicals must comply with this SOP and SOPs 320.02.01.001, *Property: State-issued and Inmate Personal Property;* 320.02.01.002, *Property: Religious;* and 402.02.01.001, *Mail Handling in Correctional Facilities.*

Each facility must outline in a field memorandum any further instruction regarding the management of religious literature.

## 21. Religious Observance

The IDOC recognizes that many religions observe certain days or periods as an important component of the religious practice. If the observance of the religious practice requires deviation from the standard facility schedule and/or processes and is not already covered in policy and restricting the religious observance would place a substantial burden on the inmate's ability to practice their religion, the IDOC will, to the extent possible, accommodate the religious observance.

An inmate must submit an *Inmate Concern Form,* based on the guidelines below. To ensure there is sufficient time to review, and if approved, coordinate the observance, inmates must submit the request at least 60 calendar days before the observance would take place.

For some religions, food items are an essential part of an observance. If it is determined that food is required for a ceremony, this must be specified in the *Inmate Concern Form.* Food items may only be provided through one of the following ways:

1. Upon approval of the facility head or designee, a Level 2 volunteer as defined in 606.02.01.001, *Volunteer Services in Correctional Facilities,* may purchase and bring the food items into the facility. The food items must be purchased from a store, packaged in sealed containers, and donated to the religion or faith group.

2. The RAOC may approve the purchase of food items, by the facility VRC or designated staff, for a specific religious group from money donated to a special fund account, based on Section 26, *Special Fund Accounts.*

3. Upon approval of the facility head or designee, inmates may use food items purchased from the commissary and brought to a designated worship area.

> **Note:** If the facility head approves the sharing of food as part of the religious observance, the sharing of the approved food does not constitute bartering. Inmates are still subject to the disciplinary process if bartering is actually taking place during the religious observance.

If a religious beverage is requested and approved as an essential part of the religious observance, staff will provide a container for the beverage. For example, if tea is required, containers will be provided to brew the tea.

| Control Number: 403.02.01.001 | Version: 8.0 | Title: Religious Activities | Page Number: 18 of 23 |
|---|---|---|---|

To request participation in a religious observance that deviates from the standard facility schedule and/or processes and is not already covered in policy, the following steps must be followed:

| Functional Roles and Responsibilities | Step | Tasks |
|---|---|---|
| **Inmate** | 1 | • Submit an *Inmate Concern Form* to the VRC detailing the request for religious observance at least 60 calendar days before the actual observance would take place.<br>• Include all of the details required to accommodate the religious observance including, but not limited to: date of observance; accommodations, including food items; whether it's a group or individual observance, etc. |
| **Facility VRC** | 2 | • Conduct research and discuss the request with the inmate to determine if denying the request would substantially burden the inmate's ability to practice their religion. Document discussion with inmate.<br>• Submit the *Inmate Concern Form* and documentation to the RAOC for review. |
| **RAOC** | 3 | • If the request was not submitted within the 60-calendar day requirement, consider whether there is still a reasonable amount of time before the observance to process the request. If there is, proceed to the next step. If there is not enough time to process, explain this in writing to the inmate and the process ends here.<br>• Review the *Inmate Concern Form* and VRC documentation. Determine if denying the request would substantially burden the inmate's ability to practice their religion.<br>• If denying the request would not substantially burden the inmate's ability to practice their religion, submit a recommendation to deny the request to the division VRC.<br>• If denying the request would substantially burden the inmate's ability to practice their faith, proceed to step 5. |
|  | 4 | • Determine if there is any compelling government interest or penological objective being met by restricting the request.<br>• If denying the request would substantially burden the inmate's ability to practice their religion and there is no compelling government interest or penological objective being met in restricting the request, the VRC will facilitate the appropriate accommodations for the observance and the process ends here. |

Idaho Department of Correction

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>19 of 23 |
|---|---|---|---|

| Functional Roles and Responsibilities | Step | Tasks |
|---|---|---|
| | 5 | • If there is a compelling government interest in restricting the request, determine the least restrictive means for accommodating the request. Document the approved accommodation and notify the inmate.<br>• The VRC will facilitate the appropriate accommodations for the observance and the process ends here. |
| **Division VRC (if applicable)** | 6 | • Review the *Inmate Concern Form*, the VRC's documentation, and the RAOC's recommendation to deny the request.<br>• Make a decision and notify the facility RAOC. Save the decision in an online-centralized location accessible by all RAOC's. |

## 22. Religious Activity Center Group Ceremonial Items

The IDOC maintains certain group ceremonial items for religions represented in the inmate population.

The list of religious activity center group ceremonial items (Appendix D) is provided as a guide to items most groups use. Facilities are not required to provide every item listed and facilities are not prevented from having additional items needed for the inmate populations if approved by the facility head or designee and in consultation with the division VRC. Facilities should try to provide items listed if inmates practicing a religion that use the items are housed at that facility. Facility size and type affect the number of items that should be provided. For example, a CRC does not have the space or resources to maintain as large an inventory as a large facility such as the Idaho State Correctional Institution (ISCI). Facility heads or designees must consult with the division VRC regarding proper inventories based on the facility's inmate population and resources.

Approved items that require an open flame, such as candles and incense, may only be used in the outdoor worship area.

Group ceremonial items must be stored and secured in the religious activity center and used only during group ceremony in the religious activity center, outdoor worship area, or sweat lodge area.

## 23. Budgets

Each facility must establish a budget for religious group ceremonial items. To the extent possible, facilities must strive to make the distribution of funds equitable, while recognizing that funding cannot be based solely on a percentage basis. Facility VRCs may communicate the budgeted amount with each religious group so the practitioners can monitor the use of consumable items.

## 24. Donations for Group Ceremonial Items

Donations for group ceremonial items are solicited from represented religious groups in the community. In addition to donated items, the IDOC may provide limited amounts of consumable religious items (such as herbs, oils, candles, firewood, and incense). Facilities

| Control Number: 403.02.01.001 | Version: 8.0 | Title: Religious Activities | Page Number: 20 of 23 |
|---|---|---|---|

are not required to stock all approved items but should communicate with inmate religious groups to determine those items most frequently used.

Inmates can donate items for group ceremonial use if the items are on the approved list (Appendix D). Any inmate who donates items to a specific group or activity must have been an active participant in that group, attending ceremonies, services, or group meetings at least 60% of the time during the 90-day period just previous to the date of the donation. The facility head or designee can make an exception to the 60% rule because of medical conditions that limit participation and/or an inmate being new to the facility. Donations must be freely given and not coerced or required for participation. Any inmate using any form of coercion or manipulation to obtain a donation is subject to disciplinary action in accordance with SOP 318.02.01.001, *Disciplinary Procedures: Inmate.*

Before an item that was approved for group ceremonial use can be converted to general use, the facility head or designee must make a reasonable effort to contact the person or group that donated the item and give them an opportunity to take possession of the item rather than have it converted to general use.

## 25. Special Fund Accounts

Religious special fund accounts may be set up to accept monetary donations to a specific faith. Donated money will not be used for personal ceremonial or personal religious items. Donated items may be used to purchase religious group ceremonial items and/or food for a group religious observance, if approved in accordance with section and Section 22, *Religious Observance*.

Donations to a specific religious special fund account may be made by inmates or from individuals, organizations, or agencies from the community as long as an inmate has not used coercion or committed other IDOC rule violations) to obtain the donation. Any inmate using any form of coercion or manipulation to obtain a donation is subject to disciplinary action in accordance with SOP 318.02.01.001, *Disciplinary Procedures: Inmate.*

The amount of money inmates can donate to a specific religious special fund account may not exceed $100 per fiscal year, per inmate. To donate money, an inmate must have attended the faith's ceremonies at least 60% of the time during the 90-day period just before the date of the donation. If the inmate is a recent transfer from another facility, this attendance requirement must be verified with the previous facility. To donate, an inmate completes an *Inmate Personal Funds Withdrawal Slip* made out to the specific fund account (for example, 'ISCI Odinist religious special fund account') and submits it to the facility VRC. The VRC will verify that the inmate meets the attendance qualification and return the withdrawal slip if the inmate does not meet the attendance qualification. If the inmate meets the qualification, the VRC will complete *Religious Special Fund Account Donation and Expenditure Log*, log the amount of money donated and forward the withdrawal slip to the central office fiscal unit. At contract facilities, the VRC will return withdrawal slips to be processed in accordance with the contractor's fiscal procedures.

Inmates from the group may inquire about their religious special fund account balance and items purchased. Inmates are not provided any information regarding who donated money or donation amounts.

To request expenditure from a religious special fund account for a group ceremonial item, use the following steps.

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>21 of 23 |
|---|---|---|---|

| Functional Roles and Responsibilities | Step | Tasks |
|---|---|---|
| Inmate(s) | 1 | Submit an *Inmate Concern Form* to the facility VRC requesting a purchase from a specific religion's special fund account. |
| Facility VRC | 2 | • Discuss the request with the religion's inmate attendees.<br><br>• If no consensus is reached, the process ends here. |
| | 3 | • Ensure the item is authorized.<br><br>• If an item is not authorized, complete the new and unfamiliar religious component process in section 19. If the division chief approves the component, the authorization for the expenditure resumes in step 3 of this section.<br><br>• If the item is authorized, forward the *Inmate Concern Form* to the RAOC chairperson. |
| RAOC Chairperson | 4 | • Review the request with the RAOC.<br><br>• Ask for additional information or offer suggestions to the inmates.<br><br>• Approve or deny the request based on the needs of the faith group. |
| Facility VRC or Designee | 5 | • **If approved** – ask the central office fiscal unit to issue a check to the vendor; **or** if a facility staff member or designee is making the purchase, use the facility purchase-order process.<br><br>• **If disapproved** – notify the religious group of the decision. The process ends here. |
| Facility VRC or Designee | 6 | • Purchase the group ceremonial items.<br><br>• Bring the items and receipts for the items to the facility VRC for verification and recordkeeping. |
| Facility VRC | 7 | Log the expenditures **and** attach the receipts using the *Religious Special Fund Account Donation and Expenditure Log.* |

## 26. General Use Religious Activity Donations

The IDOC accepts donations for all religious activities. All parties (to include inmates) who donate, with the exception of those who donate anonymously, must adhere to the parameters outlined in this section, and complete Appendix E, *Religious Activity Item Donations*

| Control Number: | Version: | Title: | | Page Number: |
|---|---|---|---|---|
| 403.02.01.001 | 8.0 | Religious Activities | | 22 of 23 |

*Any inmate using any form of coercion or manipulation to obtain a donation is subject to disciplinary action in accordance with Disciplinary Procedures: Inmate, SOP 318.02.01.001.*

Donated items, including but not limited to, religious books/literature, become property of the state of Idaho. The IDOC will redistribute items to other facilities or dispose of the items at its discretion.

The IDOC recognizes that certain items carry a special significance to a specific faith. For example, a Native American ceremonial pipe would be significant to those practicing the Native American faith. The person or group donating such an item can request that the item only be used by a specific group. The facility head or designee decides whether the item is restricted for use by a specific group. The facility head or designee must inform the person or group donating the item whether it is a restricted use item or a general use item. The person or group donating the item has the right to withdraw the donation following the facility head's or designee's decision.

### Money

Monetary donations can only be accepted if there is a specific religious special fund account set up for that purpose. When a monetary donation is accepted, the donation must be recorded using *Religious Special Fund Account Donation and Expenditure Log*.

## DEFINITIONS

***Direct supervision****:* a staff member, VRC, or religious volunteer must be physically present in the same room or area in the same area as the inmates being supervised. The staff member, VRC, or religious volunteer must not be separated from the inmates by glass, wall, or partition. If the staff member, VRC, or religious volunteer leaves that area, he is no longer in direct supervision of the inmates, even if he is in the same building. Direct supervision cannot be conducted from a tower or video technology.

***Indirect Supervision:*** Visual supervision of inmates, volunteers, contractors, etc. by observation through windows, line of sight, or the use of video technology.

***Religious Activities Oversight Committee (RAOC):*** A committee that oversees religious activities in a correctional facility, including community reentry centers (CRCs).

***Religious Activity:*** Participation in a religious service or individual form of worship.

***Religious Activity Center:*** Any outside or inside area (multi-purpose area, classroom, etc.) designated for religious activities.

***Volunteer and Religious Activity Coordinator (VRC):*** An Idaho Department of Correction (IDOC) staff member(s) or contractor(s) who (a) coordinates, recruits, and manages volunteers and volunteer activities; and (b) coordinates and supervises religious activities for the IDOC.

## REFERENCES

Appendix B, *Religious Activity Foreign Language Approval Log*

Appendix D, *Religious Activity Center Ceremonial Items*

Appendix E, *Religious Activity Item Donations*

*Certificate of Completion: Faith-based Class*

| Control Number:<br>403.02.01.001 | Version:<br>8.0 | Title:<br>Religious Activities | Page Number:<br>23 of 23 |
|---|---|---|---|

*Request for New or Unfamiliar Religious Component*

*Religious Special Fund Account Donation & Expenditure Log*

*Sweat Lodge Firewood & Rock Tracking Log*

*VRC Manual*

Standard Operating Procedure 311.02.01.001, *Marriage Procedures for Inmates*

Standard Operating Procedure 318.02.01.001, *Disciplinary Procedures: Inmate*

Standard Operating Procedure 320.02.01.001, *Property: State-issued and Inmate Personal Property*

Standard Operating Procedure 320.02.01.002, *Property: Religious*

Standard Operating Procedure 402.02.01.001, *Mail Handling in Correctional Facilities*

Standard Operating Procedure 605.02.01.001, *Furlough Program for Inmates*

Standard Operating Procedure 606.02.01.001, *Volunteer Services in Correctional Facilities*

–End of Document –

Idaho Department of Correction

**IDAHO DEPARTMENT OF CORRECTION**
**Religious Activity Foreign Language Approval Log**

Facility: _____

| Activity | Schedule* | Language | Description | Facility Head's (or Designee's) Signature and Date |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

* = Subject to change.

Appendix B
403.02.01.001
(Appendix last updated 06/01/15)

**IDAHO DEPARTMENT OF CORRECTION**
**Religious Activity Center Group Ceremonial Items**

| Item | Specifications | | | |
|---|---|---|---|---|
| | Maximum Size | Material | Other | Quantity |
| Altar Box | 66 quarts | Plastic or cardboard; wood if requested | For storage | 1 |
| Altar cloth | 22" x 22" | | Red, White, or Black | 3 |
| Antlers | 24" in length | Deer Antlers | Sweat lodge area only | 1 |
| Athame | 6" in length | Cardstock paper, cardboard, or rubber only | Can be laminated | 1 |
| Bandanas | | | Red, white, yellow, and black | 1 of each color |
| Bell | 3" tall | Brass | | 1 |
| Book of shadows | | Paper; leather cover okay | No spiral binding | 1 |
| Besom | 6" tall | | | 1 |
| Brick Dust | | | | ½ lb. per year |
| Buffalo skull | | | Sweat lodge area only | 1 |
| Candles | | | Unscented | 7 |
| Candle holders | 2" high | | | 7 |
| Caldron | 3" diameter | Natural materials | | 1 |
| Ceremonial bowls | 2" diameter x 1" deep | Wood, stone, terra cotta | | 5 |
| Ceremonial pipe and storage box | 30" in length | Natural materials | | 2 |
| Chalice | 6" tall | | | 1 |
| Chicken Bones | 3 ½ length x 1" wide | | Use for divination | 5 |
| Cornmeal | | | | ½ lb./service |
| Coffin Nails | | Sheet paper or cardboard only | | No more than 3 |
| Cowrie Shell | 3" long | | | Not to exceed 18 |
| Cowrie Shell Rattle | | | | |
| Deity figurines | 11" tall | Terra cotta, plastic, resin | No metal, stone, or other heavy material | 2 |
| Dirt/Sand | | | | 2 oz./service |
| Drinking Horn | 24" long x 6" diameter | | | 1 |
| Drum: hand | 18" in diameter | | Sweat lodge are only | 1 |
| Drum: kettle | 24" in diameter | | | 1 |

**IDAHO DEPARTMENT OF CORRECTION**
**Religious Activity Center Group Ceremonial Items**

| Item | Specifications | | | |
|---|---|---|---|---|
| | Maximum Size | Material | Other | Quantity |
| Drum: water | 12" to 18" in diameter | | Sweat lodge are only | 1 |
| Eggshell Dust | | | | 1 oz. |
| Elemental pebbles | ¾" x ½" x ½" | no precious stones | accompanying pouch/container | 13 |
| Fan | 12" to 16" spread | | No eagle feathers | 1 |
| Feathers | Must meet standards in SOP 320.02.01.002, *Property: Religious* | | | |
| Herbs | Must meet standards in SOP 320.02.01.002, *Property: Religious* | | | |
| Incense | | | Approved selection, no fragrances that are similar to drug odors such as marijuana | |
| Incense burner/holder | 3" high | natural materials | | 1 |
| Mortar and pestle | 2.5" high x 2" diameter | natural materials | | 1 |
| Moot Horn | 24" long x 6" diameter | | | 1 |
| Musical Instruments | Guitars, keyboards, drums etc. Optional based on facility design, custody, and storage. | | | |
| Oils | Must meet standards in SOP 320.02.01.002, Property: Religious | | | |
| Oil diffuser ring | 6" in diameter | natural materials | use on a light bulb | 1 |
| Oil diffuser (Electric) | | | use with essential oils | 1 |
| Oath ring | 12" diameter | Wood | | 1 |
| Pentacle | 3" diameter | | Coaster style | 1 |
| Pendulum | 12" in diameter | | retail or made by practitioners | 1 |
| Rattles | 6" in length | gourd, tortoise shell, or rawhide | | |
| Ribbon/Yarn/String | 36" long; 1/8" diameter | | Not allowed in close custody **or** for administrative segregation inmates | 1 |
| Religious Cards (including Tarot cards) with original container | Cards may not be larger than 4" x 8" | Paper, No Lamination | Tarot decks may have minimal nudity; no graphic nudity permitted | 1 set |
| Runes | | Natural Materials | storage/container or pouch | One set |

**IDAHO DEPARTMENT OF CORRECTION**
**Religious Activity Center Group Ceremonial Items**

| Item | Specifications | | | |
|---|---|---|---|---|
| | **Maximum Size** | **Material** | **Other** | **Quantity** |
| Scourge | Handle 12" long; ropes 12" long | Ropes made of cloth or paper | retail or made by practitioners | 1 |
| Sea salt/Kosher Salt/Black Salt | | | | Up to 3 ounces |
| Shell: abalone | 6" to 8" | | | 2 |
| Tea strainer | | Cloth | | 1 |
| Thor's Hammer | 12" in length | No metal | With bag/case | 1 |
| Wand/Gand | 16" in length | Wood | Dull ends | 1 |
| Ceremonial items will not be plastic or similar processed materials. | | | | |
| *Size is not to exceed the maximum in the first column, but the item can be smaller. | | | | |

**IDAHO DEPARTMENT OF CORRECTION**
**Religious Activity Item Donations**

Facility: _____  Donated Item: _____  Date: _____

Donated by: _____

**Contact Information**

Name: _____

Address: _____

Telephone number: _____

All donated items become the property of the state of Idaho. Most items are general use, which means the items are made available for use by all faiths. The IDOC disposes of the item or redistributes the items to other facilities at its discretion. Certain items that hold a spiritual significance to a specific faith may be restricted for use by members of that faith. The facility head or designee determines whether an item is restricted or general use.

☐ I understand that the donated item(s) become property of the state of Idaho.

I wish to donate the item for:

☐ General Use

☐ Restricted Use (used only by a members of a specific faith)

If the item is donated for restricted use, what faith would be using the item: _____

Please explain the spiritual significance of the item to the faith and why it should be limited for use by that specific faith:

_____
_____
_____
_____

---

**Staff Use Only**

**Volunteer and Religion Coordinator (VRC)**

The donation should be: ☐ Accepted   ☐ Not Accepted
The donation should be: ☐ General Use   ☐ Restricted Use
Comments: _____
_____
_____

**Facility Head**

☐ Approved
☐ Not approved
☐ General Use
☐ Restricted Use

_____   _____
Facility Head or Designee Signature                    Date

**Distribution:** File completed declaration in the facility VRC's office.

Appendix E
403.02.01.001
(Appendix last updated 02/27/16)